Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9100 Wilshire Blvd. #725 E.
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOB WHEELER,<br><br>Plaintiff,<br><br>vs.<br><br>WADDELL & REED FINANCIAL, INC.,<br>THOMAS C. GODLASKY, KATHIE J.<br>ANDRADE, SHARILYN S. GASAWAY,<br>JAMES A. JESSEE, KATHRINE M.A.<br>KLINE, DENNIS E. LOGUE, MICHAEL F.<br>MORRISSEY, PHILIP J. SANDERS, and<br>JERRY W. WALTON,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF<br>THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Jacob Wheeler ("Plaintiff"), on behalf of himself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

**NATURE OF THE ACTION**

1.      This is an action brought by Plaintiff against Waddell & Reed Financial, Inc. ("Waddell & Reed" or the "Company") and the members of Waddell & Reed's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Waddell & Reed will be acquired by Macquarie Management Holdings, Inc. ("Macquarie") and Merry Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2.      On December 2, 2020, Waddell & Reed issued a press release announcing that it had entered into an Agreement and Plan of Merger dated December 2, 2020 (the "Merger Agreement") to sell Waddell & Reed to Macquarie.  Under the terms of the Merger Agreement, each Waddell & Reed stockholder will receive $25.00 in cash for each share of Waddell & Reed common stock they own (the "Merger Consideration").  The Proposed Transaction is valued at approximately $1.7 billion.

3.      On February 17, 2021, Waddell & Reed filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Waddell & Reed stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the Company's financial projections and the financial analyses supporting the fairness opinion provided by the Board's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan"); and (ii) potential conflicts of interest faced by J.P. Morgan. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

4.      In short, unless remedied, Waddell & Reed's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting or appraisal decision on the Proposed Transaction.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6.      The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company operates several retail locations in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Waddell & Reed.

9.      Defendant Waddell & Reed is a Delaware corporation, with its principal executive offices located at 6300 Lamar Avenue, Overland Park, Kansas 66202.  The Company has provided investment management and wealth management services to clients throughout the United States

- 3 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

since 1937.  As of December 31, 2020, there a total of 1,333 licensed individuals associated with Waddell & Reed who operate out of offices located throughout the United States, including offices located at 1901 South Bascom Avenue, Suite 1060, Campbell, California 95008 and 900 E. Hamilton Avenue, Suite 230 Campbell, California 95008.  Waddell & Reed's common stock trades on the New York Stock Exchange under the ticker symbol "WDR."

10.     Defendant Thomas C. Godlasky ("Godlasky") has been Chairman of the Board since April 2018, and a director of the Company since July 2010.

11.     Defendant Kathie J. Andrade ("Andrade") has been a director of the Company since March 2019.

12.     Defendant Sharilyn S. Gasaway ("Gasaway") has been a director of the Company since July 2010.

13.     Defendant James A. Jessee ("Jessee") has been a director of the Company since July 2019.

14.     Defendant Kathrine M.A. Kline ("Kline") has been a director of the Company since February 2020.

15.     Defendant Dennis E. Logue ("Logue") has been a director of the Company since January 2002.

16.     Defendant Michael F. Morrissey ("Morrissey") has been a director of the Company since July 2010.

17.     Defendant Philip J. Sanders ("Sanders") has been Chief Executive Officer ("CEO"), a director of the Company, and President of the Company's asset manager Ivy Investment Management Company ("IICO") since August 2016.  Defendant Sanders previously served as Chief Investment Officer ("CIO") of the Company from February 2011 to June 2019 and as CIO of IICO from August 2010 to June 2019.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

18. Defendant Jerry W. Walton ("Walton") has been a director of the Company since April 2000.

19. Defendants identified in paragraphs 10-18 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

20. Macquarie is a Delaware corporation, with its principal executive offices located at 100 Independence, 610 Market Street, Philadelphia, Pennsylvania 19106. Macquarie is a holding company and an indirect wholly-owned subsidiary of Macquarie Group Limited ("MGL"), a publicly listed company in Australia. Macquarie is part of MGL's operating group, Macquarie Asset Management, a leading independent global asset management company. Together with its subsidiaries, Macquarie operates in the U.S. under the marketing name "Macquarie Investment Management."

21. Merger Sub is a Delaware corporation and a wholly owned subsidiary of Macquarie.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

22. Waddell & Reed is a holding company that, through its subsidiaries, provides investment management and advisory services, investment product underwriting and distribution, and shareholder services administration to a group of mutual funds and institutional accounts. Waddell & Reed also provides wealth management services, primarily to retail clients through Waddell & Reed, Inc. ("W&R"), and independent financial advisors associated with W&R, who provide financial planning and advice to their clients. As of December 31, 2020, Waddell & Reed's asset management business had $74.8 billion of assets under management and its wealth management business had assets under administration of $69.7 billion.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

23.     On October 27, 2020, Waddell & Reed announced its third quarter 2020 financial results, reporting revenue of $267.7 million, as compared to revenue of $240 million in the second quarter of 2020.  Operating income for the quarter was $37.6 million, increased from $23.6 million in the prior quarter of 2020.  Net income was $30.5 million, improved from $24.8 million in the second quarter of 2020.  Net income per share was $0.48 compared to net income per share of $0.46 in the third quarter of 2019.  Commenting on the Company's performance, defendant Sanders stated:

> I am pleased with the progress in transforming our wealth management business this quarter with continued recruiting success, growth in advisory assets and further advancement of our technologies.  At the same time, flows within our asset management business improved compared to the prior year, and our teams are seeing solid engagement across our distribution network.

**The Proposed Transaction**

24.     On December 2, 2020, Waddell & Reed issued a press release announcing the Proposed Transaction.  The press release states, in relevant part:

> OVERLAND PARK, Kan.--Waddell & Reed Financial, Inc. (NYSE: WDR) today announced it has entered into a merger agreement with Macquarie Asset Management, the asset management division of Macquarie Group (ASX: MQG; ADR: MQBKY), under which Macquarie would acquire all of the outstanding shares of Waddell & Reed for $25.00 per share in cash representing total consideration of $1.7 billion.
>
> The transaction represents a premium of approximately 48% to the closing price of Waddell & Reed common stock on December 1, 2020, the last trading day prior to the transaction announcement, and a premium of approximately 57% to Waddell & Reed's volume-weighted average price for the last 90 trading days.
>
> On completion of the transaction, Macquarie has agreed to sell Waddell & Reed Financial, Inc.'s wealth management platform to LPL Financial Holdings Inc. (Nasdaq: LPLA), a leading U.S. retail investment advisory firm, independent broker-dealer, and registered investment advisor custodian, and also enter into a long-term partnership with Macquarie becoming one of LPL's top tier strategic asset management partners.
>
> As a result of the transaction, Macquarie Asset Management's assets under management are expected to increase to over $465 billion, with the combined business becoming a top 251 actively managed, long-term, open-ended U.S. mutual fund manager by assets under management, with the scale and diversification to competitively position the business to maintain and extend its high standards of service to clients and partners.

Through its subsidiaries, Waddell & Reed Financial, Inc. has provided investment management and wealth management services to clients throughout the U.S. since 1937. Today, investment products are distributed under the Ivy Investments brand, as well as through independent financial advisors associated with Waddell & Reed, Inc. As of September 30, 2020, Waddell & Reed Financial, Inc.'s asset management business had $68 billion of assets under management and its wealth management business had assets under administration of $63 billion.

Philip J. Sanders, Chief Executive Officer of Waddell & Reed Financial, Inc., said: "Over the past few years, we have been focused on leveraging our strong heritage as the foundation for transforming our firm into a more diversified and growth-oriented financial services enterprise. The long-term partnership between Macquarie and LPL as part of this transaction accelerates that transformation and ultimately will benefit our clients and independent financial advisors while delivering significant value to our stockholders."

Martin Stanley, Head of Macquarie Asset Management, said: "The addition of Waddell & Reed Financial, Inc. and our enhanced partnership with LPL will significantly increase our ability to grow and invest in our combined business for the benefit of our clients. Ivy Investments' complementary investment capabilities will provide diversification to Macquarie Asset Management's capabilities and client base. The consideration offered reflects the quality of Waddell & Reed's business and the future benefits of our partnership with LPL."

Shawn Lytle, President of Delaware Funds by Macquarie and Head of Macquarie Group in the Americas, added: "This transaction is an important step forward in our growth strategy for Delaware Funds by Macquarie. The acquisition of Waddell & Reed's asset management business and our partnership with LPL significantly strengthens our position as a top 25 U.S. actively managed, long-term, open-ended mutual fund manager across equities, fixed income and multi asset solutions."

Dan Arnold, President and Chief Executive Officer of LPL Financial, said: "Waddell & Reed advisors are highly experienced and well-respected throughout the industry. They are a terrific fit both culturally and strategically, and we welcome them to the LPL family. Looking ahead, we expect our capabilities and resources will benefit their practices and help them unlock additional value and growth. Additionally, we look forward to deepening our long-term partnership with Macquarie, which will help us preserve unique aspects of the Waddell & Reed advisor experience while also positioning us to explore additional long-term opportunities together."

The transaction has been approved by the Boards of Directors of Waddell & Reed Financial, Inc., Macquarie Group and LPL and is expected to close in the middle of 2021, subject to regulatory approvals, Waddell & Reed Financial, Inc. stockholder approval and other customary closing conditions.

**Insiders' Interests in the Proposed Transaction**

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

25.     Waddell & Reed insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Waddell & Reed.

26.     Notably, Waddell & Reed insiders stand to reap substantial financial benefits for securing the deal with Macquarie.  Pursuant to the Merger Agreement, all outstanding restricted stock units ("RSUs") and Company restricted stock will vest and convert into the right to receive the Merger Consideration.  The following table summarizes the value of the equity awards that Company insiders stand to receive:

| Name | Company Restricted Stock ($) | Company RSUs ($) |
|---|---|---|
| Philip J. Sanders | $8,090,775 | $ — |
| Benjamin R. Clouse | $1,694,700 | $ — |
| Brent. K. Bloss | $4,321,875 | $ — |
| Daniel P. Hanson | $5,866,775 | $ — |
| Shawn M. Mihal | $1,614,650 | $70,475 |

27.     In addition, if they are terminated in connection with the Proposed Transaction, Waddell & Reed's named executive officers stand to receive substantial cash severance payments as set forth in the following table:

| Name | Cash[(1)] | Equity[(2)] | Other | Total |
|---|---|---|---|---|
| Philip J. Sanders | $6,307,834 | $8,090,775 | $ — | $14,398,609 |
| Benjamin R. Clouse | $2,767,695 | $1,694,700 | $ — | $ 4,462,395 |
| Brent. K. Bloss | $4,264,140 | $4,321,875 | $ — | $ 8,586,015 |
| Daniel P. Hanson | $4,135,740 | $5,866,775 | $ — | $10,002,515 |
| Shawn M. Mihal | $2,562,086 | $1,685,125 | $ — | $ 4,247,211 |

**The Proxy Statement Contains Material Misstatements or Omissions**

28.     Defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Waddell & Reed's stockholders.  The Proxy Statement misrepresents or

omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

29.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's financial projections and the financial analyses supporting the fairness opinion provided by the Board's financial advisor, J.P. Morgan; and (ii) potential conflicts of interest faced by J.P. Morgan.

***Material Omissions Concerning the Company's Financial Projections and J.P. Morgan's Financial Analyses***

30.     The Proxy Statement is materially deficient because it fails to disclose material information concerning the Company's financial projections.

31.     Specifically, the Proxy Statement fails to disclose the line items underlying unlevered free cash flow for Waddell & Read's asset management business and wealth management business.

32.     The Proxy Statement omits material information regarding J.P. Morgan's financial analyses.

33.     The Proxy Statement describes J.P. Morgan's fairness opinion and the various valuation analyses performed in support of its opinion.  However, the description of J.P. Morgan's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Waddell & Reed's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on J.P. Morgan's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

34.     With respect to J.P. Morgan's *Sum-of-the-Parts -- Public Trading Multiples Analysis* and *Sum-of-the-Parts – Selected Transactions Analysis*, the Proxy Statement fails to disclose: (i) the individual multiples and metrics for the companies and transactions observed in the respective

analyses; and (ii) the value of the Company's estimated cash, liquid securities and total debt utilized in the analysis.

35.     With respect to J.P. Morgan's *Sum-of-the-Parts -- Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) quantification of the inputs and assumptions underlying the discount rates ranging from 9.25% to 11.25% and 9.75% to 11.75%; (ii) quantification of Waddell & Reed's terminal value; and (iii) the value of the Company's estimated cash, liquid securities and total debt utilized in the analysis.

36.     Without such undisclosed information, Waddell & Reed stockholders cannot evaluate for themselves whether the financial analyses performed by J.P. Morgan were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction.  In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which J.P. Morgan's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

37.     The omission of this material information renders the statements in the "Certain Financial Projections Utilized in Connection with the Merger" and "Opinion of Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning J.P. Morgan's Potential Conflicts of Interest***

38.     The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by J.P. Morgan.

39.     The Proxy Statement sets forth:

For services rendered in connection with the proposed merger and the delivery of its opinion, Waddell & Reed has agreed to pay J.P. Morgan an estimated fee of approximately $25 million, $3 million of which became payable to J.P. Morgan at

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

the time J.P. Morgan delivered its opinion and **a substantial portion of which is contingent** and payable upon the consummation of the proposed merger.

*Id.* at 58 (emphasis added). The Proxy Statement, however, fails to quantify the portion of J.P. Morgan's fee which is contingent upon consummation of the Proposed Transaction.

40.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

41.     The omission of this information renders the statements in the "Opinion of Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

42.     The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other Waddell & Reed stockholders will be unable to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## <u>COUNT I</u>

### Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

43.     Plaintiff repeats all previous allegations as if set forth in full.

44.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

45. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the Company's financial projections, the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by J.P. Morgan, and J.P. Morgan's potential conflicts of interest. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

46. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or seek to exercise their appraisal rights.

47. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

48. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

### COUNT II

**Claims Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act**

49. Plaintiff repeats all previous allegations as if set forth in full.

50. The Individual Defendants acted as controlling persons of Waddell & Reed within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Waddell & Reed, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or

1    indirectly, the decision-making of the Company, including the content and dissemination of the

2    various statements which Plaintiff contends are false and misleading.

3           51.    Each of the Individual Defendants was provided with or had unlimited access to copies

4    of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or

5    shortly after these statements were issued and had the ability to prevent the issuance of the statements

6    or cause the statements to be corrected.

7           52.    In particular, each of the Individual Defendants had direct and supervisory

8    involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had

9

10   the power to control or influence the particular transactions giving rise to the securities violations as

11   alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous

12   recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They

13   were, thus, directly involved in the making of the Proxy Statement.

14          53.    In addition, as the Proxy Statement sets forth at length, and as described herein, the

15   Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed

16

17   Transaction.  The Proxy Statement purports to describe the various issues and information that they

18   reviewed and considered—descriptions the Company directors had input into.

19          54.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of

20   the Exchange Act.

21          55.    As set forth above, the Individual Defendants had the ability to exercise control over

22
     and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9,
23
     promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as
24
25   controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a

26   direct and proximate result of defendants' conduct, Waddell & Reed's stockholders will be

27   irreparably harmed.

28

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Waddell & Reed, and against defendants, as follows:

A.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Waddell & Reed stockholders;

B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

**<u>JURY DEMAND</u>**

Plaintiff demands a trial by jury on all claims and issues so triable.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Dated: February 24, 2021

**WEISSLAW LLP**
Joel E. Elkins

By: */s/ Joel E. Elkins*

Joel E. Elkins
9100 Wilshire Blvd. #725 E.
Beverly Hills, CA 90210
Telephone:  310/208-2800
Facsimile:  310/209-2348
            -and-
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, NY  10036
Telephone: 212/682-3025
Facsimile:  212/682-3010

*Attorneys for Plaintiff*

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS